UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVARIOUS GARDINER,<br><br>    Plaintiff,<br><br>  v.<br><br>WALMART INC.,<br><br>    Defendant. | Case No.  20-cv-04618-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Re: Dkt. Nos. 35, 36 |

  Now before the Court for consideration is the motion to dismiss and motion to strike class allegations filed by Defendant Walmart Inc., ("Walmart" or "Defendant").  The Court has reviewed the parties' papers, relevant legal authority, and the record in this case, and it finds this matter suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the Court GRANTS Walmart's motion to dismiss and DENIES Walmart's motion to strike.

## BACKGROUND

  Walmart is a retailer selling goods in its stores and online via its website.  (Dkt. No. 1, Complaint ("Compl.") ¶¶ 1, 14.)  Plaintiff Lavarious Gardiner alleges that he provided certain personal identifying information ("PII") to Walmart when creating his online account.  (*Id.* ¶ 7.)  Plaintiff alleges that the PII customers provide to Walmart when they create an online account includes credit card information.  (*Id.* ¶ 14.)  Plaintiff alleges on information and belief that his PII was accessed by hackers because of a data breach that took place at Walmart.  (*Id.* ¶ 7.)  According to Plaintiff, hackers have targeted Walmart numerous times "by hacking Walmart's website and Walmart's customers' computers" and then posting the stolen account information on the "dark web," which "is replete with stolen Walmart accounts for sale."  (*Id.* ¶¶ 14, 15.)  Plaintiff

alleges that his data is currently being sold on the dark web as a result of the data breach and that he has communications with hackers affirming that the accounts being sold belong to Walmart customers.  (*Id.* ¶¶ 7, 15-16.)

As a result of the purported breach of Walmart's website, Plaintiff alleges that he and the proposed class face an imminent threat of identity theft and fraud.  This has led them to spend time and resources mitigating the effects of the data breach, including by placing "freezes" and "alerts" with credit card agencies, closing or modifying financial accounts, and carefully monitoring their credit reports.  (*Id.* ¶ 41.)  Plaintiff further alleges that he and the proposed class have suffered economic damages and actual harm in the form of: (1) the improper disclosure of their PII; (2) the imminent injury flowing from potential fraud and identity theft; (3) nonexistent notification of the data breach; (4) ascertainable losses in the form of out-of-pocket expenses and value of time spent mitigating the data breach's effect; (5) losses in the form of deprivation of value of their PII; and (6) overpayments for the goods purchased from Walmart.  (*Id.* ¶ 42.)

Plaintiff brings the following causes of action: (1) violations of the California Consumer Privacy Act, Cal Civ. Code § 1798.150 *et seq.* ("CCPA"); (2) negligence; (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"); (4) breach of express contract; (5) breach of implied contract; and (6) breach of the implied covenant of good faith and fair dealing.  Plaintiff seeks compensatory damages and injunctive relief.

The Court will address other facts as necessary in the analysis.

## ANALYSIS

A. **Walmart's Motion to Dismiss.**

   1. **Legal Standard Applicable to Rule 12(b)(6).**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell At. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**2.  Plaintiff's CCPA Claim Fails.**

Walmart argues that Plaintiff's CCPA claim fails for two reasons: (1) Plaintiff's failure to allege when the breach occurred is fatal to the CCPA claim because the statute only applies to breaches occurring after January 1, 2020; and (2) Plaintiff does not adequately allege the disclosure of personal information, as defined by the statute.

The CCPA permits "[a]ny consumer whose nonencrypted and nonredacted personal information […] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action" to recover damages or injunctive relief.  Cal. Civ. Code § 1798.150(a)(1).

The CCPA went into effect on January 1, 2020, and it does not contain an express retroactivity provision.  *See* Cal. Civ. Code § 1798.198 (providing the CCPA "shall be operative January 1, 2020); *see also* Cal. Civ. Code § 3 ("[n]o part of [this Code] is retroactive, unless expressly so declared.").  Moreover, it is well-settled under California law that "in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature must have intended a retroactive application." *See, e.g., People v. Brown*, 54 Cal. 4th 314, 319-20 (2012); *Aetna Cas. & Sur. Co. v. Indus. Acc. Comm'n*,

3

30 Cal. 2d 388, 393 (Cal. 1947). Based on the text of the statute and California law, the Court concludes that the challenged provision of the CCPA does not apply retroactively. Accordingly, the alleged breach here is only actionable under the CCPA if it occurred after January 1, 2020.

Plaintiff does not dispute that the CCPA does not apply retroactively, and he concedes that he has not alleged the specific date of the breach. (*See* Opp. at 6 ("[H]e cannot say specifically when Defendant's system was breached.").) Plaintiff argues, however, that his allegation that his personal information is currently available on the dark web satisfies his pleading obligation. The Court disagrees. In order to have a viable claim against Walmart for a violation of the CCPA, Plaintiff must allege that Walmart's "violation of the duty to implement and maintain reasonable security procedures and practices" that led to the breach occurred on or after January 1, 2020. *See* Cal. Civ. Code § 1798.150(a)(1). Plaintiff has not done so. Although Plaintiff alleges that unnamed third-party criminals are currently circulating his personal information on the dark, he does not allege that the breach of Walmart's website—the relevant conduct—occurred no earlier than January 1, 2020. Absent allegations establishing that Walmart's alleged violation of the CCPA occurred after it went into effect, Plaintiff's CCPA claim is not viable.

Plaintiff's CCPA claim also fails because the complaint does not sufficiently allege disclosure of Plaintiff's personal information. "Personal information" means:

> (A) An individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted:
>
> (i) Social security number.
>
> (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual.
>
> (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account […]

> (B) A username or email address in combination with a password or security question and answer that would permit access to an online account.

Cal. Civ. Code § 1798.81.5.

Plaintiff alleges that the purported breach compromised the full names, financial account information, credit card information, and other PII of Walmart customers. Although Plaintiff generally refers to financial information and credit card fraud, he does not allege the disclosure of a credit or debit card or account number, and the required security or access code to access the account. Plaintiff concedes that the complaint does not contain such allegations. Instead, in opposition, he asks the Court to assume that the access code for a credit card is the expiration date plus the three-digit passcode on the back of the card, both of which are included when selling credit card numbers on the dark web "[o]therwise, the numbers would be useless to criminals." (Opp. at 7.) Plaintiff also asks the Court to assume that when Plaintiff entered his credit card information into his Walmart account that included the card's expiration date and security number "[o]therwise, Walmart would not have been able to charge the card." (*Id*. at 8.) From this string of speculation, Plaintiff urges that "the [c]omplaint must be read as to allege that this security information, in addition to the card number, is available for sale on the dark web." (*Id.*) But these allegations are not in the complaint; Plaintiff raises them for the first time in opposition. Although the Court will draw reasonable inferences in Plaintiff's favor at this stage, it cannot read missing allegations into the complaint. *Johnson v. Cty. of Santa Clara*, No. 5:18-CV-06264-EJD, 2019 WL 1597488, at *3 (N.D. Cal. Apr. 15, 2019) ("[A] complaint may not be amended by briefs in opposition to a motion to dismiss.") (quoting *Barbera v. WMC Mortg. Corp.*, 2006 WL 167632, at *2 n. 4 (N.D. Cal. Jan. 19, 2006)).

Accordingly, the Court GRANTS Walmart's motion to dismiss Plaintiff's CCPA claim.

### 3. Plaintiff Has Not Sufficiently Alleged Injury to Support His Remaining Claims.

Walmart moves to dismiss Plaintiff's remaining claims for negligence, contract, and violations of the UCL for failure to plead cognizable injury. Plaintiff contends that he presents four theories of injury that support his claims: (1) loss of value of his PII; (2) future risk of identity theft; (3) out-of-pocket expenses for credit monitoring services; and (4) the benefit of the bargain.

5

Specifically, Plaintiff alleges that he and the class members were damaged because their PII was accessed by third parties, resulting in increased risk of identity theft, and which forced Plaintiff and the class members to adopt costly and time-consuming preventative and remediating efforts, including cancelling credit cards and freezing accounts. Plaintiff also alleges that he and class members were damaged because they overpaid for goods sold by Walmart for which they would not have paid had they known Walmart would not protect their PII. Plaintiff further alleges that he suffered injury when he lost the value of his PII, which "now that it has been exposed to hackers, is no longer worth the price that Plaintiff could have obtained for it on the market." (Compl. ¶¶ 95, 102.) The Court will address each theory of injury.

### a. Loss of Value of PII.

Plaintiff alleges damages in the form of deprivation of the value of his PII. Specifically, Plaintiff alleges that "there is a well-established national and international market" for his and class members' PII, "which has a real market value." (*See id.* ¶¶ 42(e), 102.) Walmart argues that deprivation of value of PII is not a cognizable form of injury because Plaintiff has not alleged that he wants to sell his financial information to someone else.

Although the Ninth Circuit has recognized that allegations of diminished value of personal information may be sufficient to establish injury, *see In re Facebook Privacy Litig.*, 572 Fed. App'x 494 (9th Cir. 2014), Plaintiff's allegations of the lost value of his PII are insufficient to support this theory of damages. Plaintiff asserts that a market exists for his PII, but he has not alleged with specificity what PII was stolen. Plaintiff refers generally to compromised credit card numbers, but he concedes in his opposition that a credit card cannot be used without an access code or password and/or expiration date. He does not allege that this information was compromised, and a credit card number alone may not have significant value to cause harm. *See Brett v. Brooks Bros. Grp.*, No. CV 17-4309-DMG (Ex), 2018 WL 8806668, at *4 (C.D. Cal. Sept. 6, 2018) (noting that harm of future identity theft was conjectural when the personal information at issue involved only the credit card numbers and names). This sets Plaintiff's allegations apart from those in the cases he cites. *See, e.g.*, *Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *1 (N.D. Cal. Apr. 1, 2015) (PII shared with third party included "credit card

information, purchase authorization, addresses, zip codes, names, phone numbers, email addresses, and/or other information"); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617, 2016 WL 3029783, at *15 (N.D. Cal. May 27, 2016) (PII allegedly exposed in data breach included names, birth dates, social security numbers, health care ID numbers, home addresses, email address, employment information, and health information including medical history and payment and billing records). Accordingly, without additional factual allegations identifying what PII was stolen, Plaintiff's bare assertions that his PII had value or that an economic market exists for Plaintiff's PII are insufficient to support his claims. *See Razuki v. Caliber Home Loans, Inc.*, No. CV 17-1718-LAB (WVGx), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) (finding plaintiff failed to sufficiently allege damages to support his negligence claim where plaintiff's "claim alleging diminution of value of his personal data fails to allege enough facts to establish how his personal information is less valuable as a result of the breach.")

      **b.**  **Risk of Future Harm.**

    Plaintiff's conclusory allegations of an increased risk of identity theft are insufficient to establish injury as required for his negligence, contract, and UCL claims. Plaintiff vaguely alleges that he and class members face an increased risk of future identity theft because hackers accessed their data, but he does not offer specific facts regarding the PII that was allegedly stolen, does not allege that any misuse has occurred, and does not allege how the stolen personal information constitutes a nonspeculative injury. "[T]he mere danger of future harm, unaccompanied by present damage, will not support a negligence action." *Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2020 WL 7408230, at *6 (quoting *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 951 (S.D. Cal. 2012)).

    Plaintiff argues that courts frequently find that an increased risk of future identity theft resulting from a data breach constitutes cognizable injury, but he relies on cases analyzing the allegations required to establish Article III injury-in-fact. *See, In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (finding the plaintiffs sufficiently alleged "a concrete and imminent threat of future harm sufficient to establish Article III injury-in-fact at the pleading stage"); *In re Zappos.com, Inc.*, 888

F.3d 1020, 1029 (9th Cir. 2018) (risk of identity theft sufficient to allege Article III injury-in-fact); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1035 (N.D. Cal. 2019) (same); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (same).

However, the allegations required to sufficiently plead injury-in-fact for purposes of Article III standing are not the same as those required to plead damages for purposes of state law claims. *See Huynh*, 2020 WL 7408230, at *5 ("[T]he Ninth Circuit has held that its 'holding that Plaintiff-Appellants pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims.'") (quoting *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010)); *see also In re Sony Gaming*, 903 F. Supp. 2d at 963 ("While Plaintiffs have currently alleged enough to assert Article III standing to sue based on an increased risk of future harm, the Court finds such allegations insufficient to sustain a negligence claim under California law.")  Indeed, Plaintiff cites cases that draw this very distinction. For example, the court in *In re Yahoo!* explained that although the plaintiffs' allegations of future injury were "sufficient to establish standing under the broader injury-in-fact requirements of Article III," the same allegations were not sufficient to allege lost money or property under the UCL.  2017 WL 3727318, at *22.  The same is true here.

Walmart also argues that Plaintiff has foreclosed the possibility of future harm because the complaint alleges that he and class members have "clos[ed] or modif[ied] financial accounts" as a result of the breach. (Compl. ¶ 41.)  The Court is not persuaded by Plaintiff's characterization of this allegation as a drafting error.[1]  However, drawing inferences in favor of Plaintiff, the Court cannot conclude that the allegations in the complaint establish that Plaintiff has cancelled the credit cards implicated in the alleged breach.  The Court cautions, however, that to the extent Plaintiff amends his complaint to clarify this allegation, he may only do so if it can be done consonant with his pleading obligations under Rule 11 of the Federal Rules of Civil Procedure. *See, e.g., Volis v. Housing Auth. Of City of Los Angeles Employees Guthrie*, CV 13-01397, 2014

---

[1] Plaintiff argues in opposition that he did not cancel his credit cards, and "does not even know for sure which credit cards were compromised, as he does not know which were used." (Opp. at 16.)  This argument, however, if true, undermines any argument that Plaintiff has suffered injury.

8

WL 12677316, *9 (C.D. Cal. 2014) ("[T]he Court is not required to accept as true allegations in an amended complaint that contradict an earlier complaint without explanation.").

Accordingly, Plaintiff has not sufficiently alleged a threat of future harm to sustain his negligence, breach of contract, and UCL claims.

### c. Out-of-Pocket Expenses.

Plaintiff also contends that he asserts a cognizable injury in the form of out-of-pocket expenses and the value of time spent attempting to mitigate the effects of the alleged data breach. Courts have found that credit monitoring may be "compensable where evidence shows that the need for future monitoring is a reasonably certain consequence of the defendant's breach of duty, and that the monitoring is reasonable and necessary." *Corona v. Sony Pictures Entm't, Inc.*, No. 14-cv-09600 RGK EX, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1006-1007 (1993).

Here, Plaintiff alleges that "as a necessary and reasonable measure to protect himself, [he] purchased a credit and personal identity monitoring service to alert him to potential misappropriation of his identity and to combat the risk of further identity theft." (Compl. ¶ 7.) Plaintiff offers no factual allegations in support of the alleged credit monitoring services, nor does he sufficiently allege that such services were reasonable and necessary. Accordingly, Plaintiff has not sufficiently alleged injury based on out-of-pocket expenses allegedly spent on credit monitoring services. *See Holly v. Alta Newport Hosp., Inc.*, No. 2:19-cv-07496-ODW (MRWx), 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020) (conclusory allegations concerning mitigation or remediation insufficient where plaintiff did not provide any supporting factual allegations or allege how any credit monitoring was reasonable and necessary).

### d. Benefit of the Bargain.

Plaintiff also argues that he alleges sufficient injury to support his contract and UCL claims based on a benefit of the bargain theory. Plaintiff alleges that he "suffered a monetary injury because he did not receive the benefit of his bargain with Defendants, through which he agreed to pay for goods with the understanding that his payment information would be protected by Defendants." (Compl. ¶ 94; *see also id.* ¶ 118.) Plaintiff alleges that he and class members

9

entered into an express contract with Walmart under which they provided Walmart with their PII. According to Plaintiff, this contract incorporated Walmart's Privacy Policy. In the complaint, Plaintiff quotes portions of the Privacy Policy and provides a web address where the policy can be found. Under the Privacy Policy, Walmart represents that it uses reasonable security measures to protect a customer's personal information.

As an initial matter, Plaintiff's vague allegations do not establish how Walmart failed to take reasonable measures to protect customer's data. In any event, Plaintiff's benefit of the bargain theory fails because he has not alleged that Walmart represented in the Privacy Policy, or otherwise, that the cost of data security was included in the cost of its goods. *See Ables v. Brooks Bros. Grp.*, No. CV 17-4309-DMG (EX), 2018 WL 8806667, at *7 (C.D. Cal. June 7, 2018) (benefit of bargain theory cognizable in data breach context in the presence of a security agreement concerning consumer data or some other representation that the cost of security is subsumed within the cost of goods). Plaintiff does not allege facts that his Walmart purchases included a sum understood by the parties to be allocated toward customer data protection nor does he allege that he was required to agree to or accept the terms of the Privacy Policy prior to engaging in any purchase. Accordingly, Plaintiff's allegations do not establish that the cost of the goods he purchased at Walmart included some amount attributable to data security as required to support his benefit of the bargain theory. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 834 (N.D. Cal. 2020) (finding benefit of bargain not a viable theory of damages where plaintiffs did not allege to have paid anything for the services); *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (rejecting plaintiffs' benefit of the bargain theory because "the FAC fails to allege that Plaintiffs actually provided consideration for the security services which they claim were not provided"); *Huynh*, 2019 WL 11502875, at *10 (finding "lost benefit of the bargain is not sufficient to allege damages because Plaintiffs have not shown that they paid anything for the asserted privacy protections"). The Court finds this theory of injury insufficient to support his UCL and breach of contract claims.

Plaintiff's vague and conclusory allegations regarding his purported injuries are insufficient to establish the damages element required for his breach of contract, negligence, and

UCL claims. *See Holly*, 2020 WL 1853308, at *6 (granting motion to dismiss because plaintiff's "conclusory and vague allegations are insufficient to establish that she suffered actual damages as a result of the data breach"). Accordingly, the Court GRANTS Walmart's motion to dismiss.

### 4. Plaintiff's UCL Claim Is Subject to Dismissal for Other Reasons.

Walmart argues that Plaintiff's UCL claim fails for three additional reasons: (1) Plaintiff cannot show he lacks adequate remedies; (2) Plaintiff lacks statutory standing; and (3) Plaintiff cannot predicate his UCL "unlawful" claim on alleged violations of other laws.

#### a. Plaintiff fails to show that he lacks adequate remedies.

"Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages." *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. SACV 11-01197-CJC (ANx), 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012) (citing *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1146–49 (2003)). Recently in *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit held the plaintiff's claims for equitable relief were properly dismissed because she failed to allege a lack of adequate legal remedy. 971 F.3d 834, 844 (9th Cir. 2020). The Ninth Circuit found "that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 843-44. *Sonner* has been extended to claims for injunctive relief. *See, e.g.*, *Zaback v. Kellogg Sales Co.*, No. 3:20-cv-00268-BEN-MSB, 2020 WL 6381987, *4 (S.D. Cal. Oct. 29, 2020) (dismissing a UCL claim for injunctive relief because the plaintiff failed to allege that there was no adequate remedy at law); *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *2-3 (N.D. Cal. Oct. 13, 2020) (finding that *Sonner* extends to preclude claims for injunctive relief); *Teresa Adams v. Cole Haan, LLC*, No. SACV 20-913 JVS (DFMx), 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (finding, under the reasoning of *Sonner*, that there is no "exception for injunctions as opposed to other forms of equitable relief").

Here, Plaintiff alleges that he has suffered compensable damages, and in his opposition, he concedes that legal remedies exist. Plaintiff does not address *Sonner*, but he contends that he should be permitted to seek equitable remedies because he will have no adequate remedy at law if

11

the Court finds his claims for legal remedies deficient. Plaintiff provides no authority in support of this position, and the Court finds this argument unavailing. *See Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable.")

Plaintiff also argues that he lacks adequate legal remedies because: (1) injunctive relief is required to ensure Walmart adopts industry-standard, reasonable safeguards to protect its customers; and (2) Plaintiff seeks a full refund of the purchase price of the Walmart products he purchased, which he will not receive through legal remedies. Neither argument is persuasive. First, Plaintiff has not demonstrated that the potential harm caused by Walmart's failure to protect its customers could not be remedied by monetary damages. *See Huynh*, 2020 WL 7495097, at *19. Second, Plaintiff would not necessarily be entitled to the full refund of the purchase price as restitution. *See Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC, 2020 WL 6743912, at *5 (N.D. Cal. Nov. 17, 2020) ("[S]ome courts have held that a full refund of the purchase price is not even available as restitution.")

### b. Plaintiff lacks statutory standing under the UCL.

"To assert a UCL claim, a private plaintiff needs to have 'suffered injury in fact and ... lost money or property as a result of the unfair competition.'" *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (quoting *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir.2010). Plaintiff relies on his allegations of overpayment, increased risk of identity theft, and time and money spent mitigating the risk of fraud to argue that he has established UCL standing; however, those arguments fail for the reasons discussed above. *See also Huynh*, 2019 WL 11502875, at *7 ("[T]hat Plaintiffs did not receive the full benefit of their bargain with Quora is not a loss of money or property because Plaintiffs did not pay for Quora's services"). Moreover, courts have widely held that "personal information" does not constitute money or property under the UCL. *See In re iPhone,* 2011 WL 4403963, at *14.

### c. Plaintiff has not alleged a predicate violation to support his unlawful claim.

The UCL's unlawful prong allows plaintiffs to "borrow" other laws and make claims

12

independently actionable under the UCL. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, Plaintiff's unlawful claim is premised on violations of the CCPA, CRA, and FTC. As an initial matter, Plaintiff does not meaningfully address Walmart's arguments that these violations cannot serve as the predicate for his UCL claim, and so he concedes Walmart's assertion. *Gordon v. Davenport*, No. 08-cv-3341, 2009 WL 322891, at *4 n.4 (N.D. Cal. Feb. 9, 2009). Moreover, to the extent that Plaintiff rests his unlawful claim on claims that the Court has dismissed in this order, the UCL unlawful claim must also be dismissed. *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, 2018 WL 1805516, at *13 (N.D. Cal. Apr. 16, 2018.

### 5. The Economic Loss Doctrine Bars Plaintiff's Negligence Claim.

Walmart argues Plaintiff's negligence claims are barred by the economic loss doctrine. Under California law, "[i]n the absence of (1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 967 (S.D. Cal. 2014) (internal citations and quotation marks omitted).

As an initial matter, the Court disagrees with Plaintiff's contention that the economic loss rule does not apply in data breach cases. Plaintiff cites out of circuit authorities for this proposition; he does not address cases in this circuit applying the economic loss rule in the data breach context, *see, e.g., In re Sony Gaming*, 996 F. Supp. 2d at 972, and he cites one such case himself, which further undercuts his argument. (*See* Opp. at 21 (citing *Bass*, 394 F. Supp. 3d at 1039).)

Plaintiff argues that he has alleged non-economic harm in the form of time spent checking his credit and taking preventative measures against identity theft. However, courts have found that the cost of lost time is an economic harm not recoverable under the economic loss doctrine. *See N. Am. Chem. Co. v. Superior Court,* 59 Cal. App. 4th 764, 777 n. 8 (1997) (noting that purely economic loss includes lost opportunities); *Dugas*, 2016 WL 6523428, at *12 (applying economic loss rule to negligence claims where alleged injuries included "costs associated with time spent

13

and loss of productivity"); *In re Sony Gaming*, 903 F. Supp. 2d at 961 n.15 (S.D. Cal. 2012); *but see In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020) ("[P]laintiffs have alleged they have lost time responding to the Breach as well as suffering from increased anxiety and so do not allege purely economic losses."). Here, Plaintiff alleges that he and class members have suffered ascertainable losses in the form of "the value of their time." (Compl. ¶ 42(e).) Accordingly, the Court concludes that Plaintiff's allegations about the value of his lost time constitutes economic loss.

Plaintiff also argues that even if the economic loss doctrine is applicable, a "special relationship" exists between the parties, which permits him to recover economic losses for his negligence claim. *See J'Aire Corp. v. Gregory*, 24 Cal.3d 799 (1979). A special relationship will exist, for example, if "the plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out." *Id.* Here, Plaintiff's allegations are insufficient to establish this type of special relationship. Plaintiff does not allege that the transaction at issue was intended to benefit Plaintiff in a specific way that sets him apart from all potential Walmart customers. *See In re Sony Gaming*, 996 F. Supp. 2d at 972. Accordingly, the Court concludes that Plaintiff's allegations fail to establish the existence of a special relationship.

6. **Walmart's Limitation of Liability Clause Precludes Plaintiff's Contract Claims.**

Walmart also argues that it's Terms of Use ("TOU")[2] bar Plaintiff's claims for breach of express and implied contract and breach of implied covenant of good faith and fair dealing. The TOU contains a disclaimer of warranties provision, which provides that information sent or received while using the Walmart website "may not be secure and may be intercepted or otherwise

---

[2] Walmart asks the Court to take judicial notice of several iterations of Walmart.com's Terms of Use, the effective dates of which span the alleged class period, pursuant to Rule 201 of the Federal Rules of Evidence. (*See* Dkt. No. 34, Request for Judicial Notice ("RJN").) Plaintiff does not oppose Walmart's request. Courts have routinely taken judicial notice of contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot be questioned. *See United States ex rel. Hong v. Newport Sensors, Inc.*, No. SA 13-CV-1164-JLS (JPRX), 2016 WL 8929246, at *3 (C.D. Cal. May 19, 2016). Accordingly, the Court GRANTS Walmart's request and takes judicial notice of the versions of the Terms of Use attached as Exhibits A-I.

14

accessed by unauthorized parties." (RJN, Ex. G, § 17.) The TOU also contains a limitation of liability provision, which applies to "theft, destruction, authorized access to, alteration of, loss of use of any record or data," among other things. (*Id.*, § 18.)

"Generally, a limitation of liability clause is intended to protect the wrongdoer defendant from unlimited liability," and such clauses "have long been recognized as valid in California." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012) (internal quotation marks omitted). These clauses are enforceable unless unconscionable for breach of contract claims. *See id.* "[U]nconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (internal quotation marks omitted).

Plaintiff does not dispute that he agreed to the TOU, but he argues that the limitation of liability provision is both procedurally and substantively unconscionable.[3] First, Plaintiff argues that the TOU is unconscionable because it is a contract of adhesion. But adhesion contracts are not per se unconscionable under California law. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017). Second, Plaintiff contends that the TOU's limitation of liability provision creates consumer confusion because it conflicts the terms of the Privacy Policy, which renders it procedurally unconscionable. However, the limitation of liability provision contains clear language, is not buried in the TOU, and is emphasized with the use of capitalization. Accordingly, the Court concludes that the TOU put consumers on notice that Walmart's reasonable measures for protecting PII were not infallible. Plaintiff also argues that the TOU is substantively unconscionable because it "purports to waive liability for all damages of any kind…making the [TOU] completely illusory." (Opp. at 25.) Similar limitation of liability provisions, however, are routinely upheld by courts, and Plaintiff offers no contrary authority. *See, e.g., Huynh*, 2019 WL 11502875, at *11 (finding similar limitation of liability provision

---

[3] Plaintiff does not allege when he created his Walmart account so it unclear to which version of the TOU he assented. However, each version appears contains a limitation of liability provision that would apply to the contract claims.

15

enforceable). Accordingly, the limitation of liability provision in the TOU bars Plaintiff's contract claims. However, Plaintiff will be permitted leave to amend because facts could conceivably be alleged which would go towards determining procedural or substantive unconscionability at the time Plaintiff entered the contract.

### B.     The Court Denies Walmart's Motion to Strike Class Allegations.

Walmart moves to strike Plaintiff's class allegations under Rule 12(f) and under Rules 23(c)(1)(A) and 23(d)(1)(D) on the basis that innumerable unnamed class members agreed to arbitrate their claims unlike Plaintiff. Walmart argues that Plaintiff's failure to show that he is party to the arbitration agreement included in Walmart's TOU renders him an atypical and inadequate representative of the proposed class. Plaintiff seeks to represent a class of:

> All persons residing in the State of California who had a Walmart account at any time from four years prior to the date of the filing of this Complaint to the date of notice is sent to the class.

(Compl. ¶ 43.)

Rule 12(f) permits the Court, in its discretion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Cal. Dep't of Toxic Substance Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 974 F.2d 1524, 1527 (9th Cir. 1993) (internal quotations and citations omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* (internal quotations and citations omitted). Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Cal. Dep't of Toxic Substance Control*, 217 F. Supp. 2d at 1033.

Courts within this District and within the Ninth Circuit have determined that "motions to strike are not the proper vehicle for seeking dismissal of class allegations." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. 13-cv-01803-EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014); *see also, e.g., DeLux Cab, LLC v. Uber Techs., Inc.*, No. 16-cv-3057-CAB-JMA, 2017

16

WL 1354791, at *8 (S.D. Cal. Apr. 13, 2017); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-04387-PJH, 2011 WL 2111796, at *15 (N.D. Cal. May 26, 2011).  To the extent Walmart relies on Rule 12(f), the Court concludes the class allegations are not redundant, immaterial, impertinent, or scandalous.  *See, e.g., Beal v. Lifetouch, Inc.*, No. 10-cv-08454 JST (MLGx), 2011 WL 995884, at *7 (C.D. Cal. March 15, 2011).

Walmart also argues that the Court should strike the allegations pursuant to Rule 23, which provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D); *see also* Fed. R. Civ. P. 23(c)(1)(A) (a court may determine whether to certify the action as a class action at "an early practicable time").  Even under this rule, courts have determined that "class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification."  *Yastrab v. Apple Inc.*, No. 14-cv-01974-EJD, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015); *cf. In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 616 (N.D. Cal. 2007) ("[T]he granting of motions to dismiss class allegations before discovery has commenced is rare.").  However, in some cases the issue may be "plain enough" based on the pleadings.  *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982); *see also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (under Rule 23(d), a court "has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained").

Walmart asserts that Plaintiff did not assent to the version of the TOU containing the arbitration agreement, which makes him atypical and inadequate to represent the putative class members who are subject to the arbitration agreement.  Walmart bases this argument on an assertion Plaintiff made in a declaration attached to his opposition to Walmart's withdrawn motion to compel arbitration.[4]  But "[t]he effect of withdrawal of a motion is to leave the record as it stood

---

[4] Civil Local Rule 7-7(e) permits a moving party to withdraw its motion within seven days after an opposition is filed.  The filing of a timely notice of withdrawal is self-executing.  *See* L.R. 7-7(e); *see also Thomas v. Evans*, No. C 06-3581 MMC (PR), 2008 WL 2024954, at *1 (N.D. Cal. May 9, 2008).  Walmart filed a motion to compel arbitration on October 9, 2020.  Plaintiff filed his opposition to Walmart's motion to compel arbitration on October 23, 2020.  Walmart timely filed its notice of withdrawal on October 29, 2020.

1  prior to the filing as though the motion had never been made." *Davis v. United States*, No. 5:07-
2  cv-00481-VAP-OP, 2010 WL 334502, at *2 (C.D. Cal. Jan. 28, 2010); *see also Larson v.*
3  *Harman-Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 WL 3326695, at *1 (E.D. Cal. Mar.
4  22, 2018) ("Withdrawal of a motion has a practical effect as if the party had never brought the
5  motion.").

6       Here, the complaint lacks allegations establishing whether or not Plaintiff consented to
7  arbitration, and Walmart offers no other evidence of Plaintiff's alleged opt-out and no argument as
8  to why the Court should consider evidence that was submitted in opposition to a withdrawn
9  motion. Indeed, in withdrawing its motion to compel, Walmart confirmed the need for additional
10 discovery to resolve issues related to arbitration. The fact that many issues surrounding arbitration
11 remain in dispute sets this case apart from those cited by Walmart, in which the defendants had
12 clearly established that the plaintiffs were not subject to the respective arbitration agreements.
13 While the arbitration issue may prove to be a strong argument against class certification, the Court
14 cannot conclude based on the pleadings that a class action cannot be maintained. Accordingly, the
15 Court DENIES Walmart's motion to strike the class allegations.
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Walmart's motion to dismiss and DENIES Walmart's motion to strike the class allegations. The Court GRANTS Plaintiff leave to amend to cure the deficiencies identified in this Order, if he can do so consistent with his obligations under Federal Rule of Civil Procedure 11. Plaintiff shall file and serve his amended complaint within 21 days.

Furthermore, the Court admonishes Plaintiff to review and comply with the Court's Local Rules and this Court's Standing Orders. Plaintiff's opposition to the motion to dismiss and the opposition to the motion to strike exceeded this Court's page limitations. *See* Civil Standing Orders ¶ 7. Future non-compliant filings will be stricken.

**IT IS SO ORDERED.**

Dated: March 5, 2021

_____
JEFFREY S. WHITE
United States District Judge